CALABRIA, Judge.
*501 Respondent appeals from an order granting guardianship of her minor child, N.H. ("Nancy"), to her sister, K.P. ("Ms. Parker").[1] We hold that there was evidence before the trial court that Ms. Parker has adequate resources to care appropriately for Nancy, and therefore that the trial court did not err in awarding guardianship of Nancy to Ms. Parker.
*502 I. Factual and Procedural Background
The Buncombe County Department of Social Services ("DSS") initiated the underlying juvenile case on 23 March 2016, when it filed a juvenile petition alleging Nancy was an abused and neglected juvenile based on allegations that she had been sexually abused by respondent's former roommates, concerns of possible drug use by respondent, and concerns of domestic violence in the home. DSS did not seek non-secure custody of Nancy, because she was in a safety resource placement. On 15 April 2016, Nancy was transferred to the care of Ms. Parker, and she has remained in Ms. Parker's care throughout the case.
After a hearing on 6 July 2016, the trial court entered an order on 22 July 2016, adjudicating Nancy to be an abused and neglected juvenile. According to the order, Nancy remained in the legal custody of respondent and Nancy's father, but Nancy's safety resource placement continued with Ms. Parker. The court granted respondent weekly supervised visitation with Nancy and ordered that Nancy continue to be involved with outpatient mental health therapy. Additionally, the court ordered respondent to: (1) be involved in mental health treatment; (2) follow the therapist's recommendations; (3) follow up with the recommendations of her comprehensive clinical assessment; (4) participate in Nancy's therapy; (5) submit to *843 random drug testing; and (6) complete a medication evaluation and follow all recommendations.
On 6 September 2016, the trial court conducted the initial permanency planning and review hearing in this case. In its order from the hearing, entered 21 November 2016, the court set the primary permanent plan for Nancy as guardianship and set the secondary plan as reunification with her parents. The court awarded guardianship of Nancy to Ms. Parker, granted respondent weekly supervised visitation with Nancy, and directed DSS to continue to work toward Nancy's reunification with her parents. Respondent filed timely notice of appeal from the trial court's order awarding guardianship of Nancy to Ms. Parker.
II. Verification of Guardian's Resources
Respondent's sole argument on appeal is that the trial court erred in failing to properly verify that Ms. Parker's resources were adequate to provide Nancy appropriate care as her guardian. We disagree.
A. Standard of Review
"Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and [whether] the findings support the conclusions of law."
*503 In re R.A.H. , 182 N.C. App. 52, 57-58, 641 S.E.2d 404, 408 (2007) (citation and quotation marks omitted). Before a trial court may appoint a guardian of the person for a juvenile in a Chapter 7B case, the court must "verify that the person being appointed as guardian of the juvenile understands the legal significance of the appointment and will have adequate resources to care appropriately for the juvenile." N.C. Gen. Stat. § 7B-600(c) (2015), see also N.C. Gen. Stat. § 7B-906.1(j) (2015) (requiring an identical verification when appointing a guardian of a person for a juvenile as part of the juvenile's permanent plan). "[T]he trial court need not make detailed findings of evidentiary facts or extensive findings regarding the guardian's situation and resources, ... [but] some evidence of the guardian's 'resources' is necessary as a practical matter, since the trial court cannot make any determination of adequacy without evidence." In re P.A. , 241 N.C. App. 53, 61-62, 772 S.E.2d 240, 246 (2015). "The court may consider any evidence, including hearsay evidence ... that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen. Stat. § 7B-906.1(c).
B. Analysis
With regard to the adequacy of Ms. Parker's resources to care for Nancy as her guardian, the trial court found:
28. [Ms. Parker was] present at this hearing. Pursuant to N.C.G.S. § 7B-600(b), the Court questioned [Ms. Parker] and she understand[s] the legal significance of being appointed the minor child's guardian, and she has adequate resources to care appropriately for the minor child, and [is] able to provide proper care and supervision of the minor child in a safe home.
However, on appeal, respondent contends that there was no evidence presented to the trial court to support such a finding. For example, respondent notes that Ms. Parker "testified as to her employment with Buncombe County Schools Transportation, but she did not testify as to her actual income, whether she was paid a salary or worked by the hour, whether she received any job benefits, nor any other specifics regarding her employment other than she had no other source of income." Respondent notes various financial assets which Ms. Parker may or may not have had, and the fact that no testimony was elicited with respect to such hypothetical resources.
We acknowledge that our case law addresses this situation from numerous angles, none of them precisely on point. For example, in In re N.B. , guardians testified about their willingness to take responsibility, *504 there was a report stating the guardians were willing and able to provide care, and the social worker spoke "in depth" with the guardians about the requirements and responsibilities of being guardians. We held that this was adequate evidence pursuant to N.C. Gen. Stat. § 7B-906.1. In re N.B. , 240 N.C. App. 353, 361-62, 771 S.E.2d 562, 568 (2015). By contrast, in In re P.A. , where the only evidence *844 was an unsworn statement by the guardian that the guardian had the ability to support the juvenile, we held that this was insufficient. P.A. , 241 N.C. App. at 65, 772 S.E.2d at 248. Likewise, in In re J.H. , where there was a report in evidence but the proposed guardians did not testify, we held that this was insufficient. In re J.H. , --- N.C. App. ----, ----, 780 S.E.2d 228, 240 (2015).
In the instant case, there are two GAL reports and one DSS report in the record, and Ms. Parker was present in court and offered testimony. The first GAL report, dated 30 June 2016, notes that Ms. Parker "is employed with the school district[,]" but makes no other observations about Ms. Parker's resources. The second GAL report, dated 1 September 2016, notes that Ms. Parker "is employed as a school bus driver for the school district," and that Ms. Parker "is a single mom with no income when she is not driving a school bus during the summer[,]" but otherwise makes no other observations about Ms. Parker's resources. The DSS report, also dated 1 September 2016, notes that respondent has given Ms. Parker a total of $30 when Ms. Parker experienced "significant financial difficulties[,]" that DSS has provided Ms. Parker with "gift cards of $30 per month to assist with purchasing food and gas[,]" and that Ms. Parker "has experienced financial difficulties in this process[,]" but makes no specific findings as to Ms. Parker's resources aside from these.
At trial, Ms. Parker was questioned about her resources. Although she was not specifically questioned about her salary or benefits, her examination was still thorough:
Q. Okay. And so you're willing to be legally responsible for meeting all [Nancy]'s needs until she's 18 years old, is that correct?
A. Yes.
Q. And you understand that that means you would [be] responsible for meeting her medical needs, her dental needs, her psychological needs, her educational needs, and any other needs until she's 18, correct?
A. Yes.
*505 Q. And you're comfortable with that?
A. Yes.
...
Q. Do you work outside the home?
A. Yes.
Q. Where do you work?
A. Buncombe County Schools Transportation.
Q. Okay. And do you have any other source of income?
A. No.
Q. After you are paid every month, do you have sufficient money to cover all of your household bills?
A. Yes.
Q. And after you pay all of your bills, do you have money left over to cover groceries and any other needs?
A. It depends on what bills, but yes, we make it.
Q. Have you ever been a position where you didn't have enough money to pay all the bills related to housing, food, medical, transportation?
A. Over this past summer, yes, because I wasn't able to be employed with the intense home therapy and stuff, but I did manage to save up money and it go[t] me through almost all of the summer. So-
Q. Why weren't you able to be employed over the summer?
A. Due to the nonapproved child care for [Nancy], I didn't have no one to leave her with.
Q. Okay. So you were unable to be employed this summer because you were caring for [Nancy]?
A. Yes. And then whenever she started intense home therapy, it's a requirement three to five days a week [inaudible]. I have to be involved in that.
Q. Okay. And you mentioned you were able to save up money to get you through the summer?
*506 A. Yes.
Q. Okay. And if the Court were to award guardianship to you, what would be your plan for next summer?
A. Save up.
Q. Okay. So now that you-this summer you would be aware that you would not be able to be employed and you can save up *845 throughout the year to cover your expenses during the summer?
A. Yes.
Q. Do you feel-
A. It was-it was more difficult because I had transitioned-I worked at a gas station and transitioned into the Buncombe County Transportation in, I think, March-at the end of March, and then I got [Nancy] and kind of put it on halt.
Q. Okay.
A. My plan was to have a summer job, so-
Q. Okay. Do you anticipate that you will have sufficient financial income to cover all of your expenses even during the summertime when you're not employed?
A. Yes.
Q. Okay. If you were to find that-say, for example, you ran out of money and needed financial assistance, do you have family that you could go to ask for help?
A. Yes.
Q. Okay. And would you be willing to do that if you had to?
A. Yes.
Q. And would you also know to reach out to the Department or other community resources to seek help if you needed to?
A. Yes.
Certainly, the statements in the GAL and DSS reports, as well as Ms. Parker's own testimony that she had financial difficulties over the *507 summer, would constitute evidence that Ms. Parker lacked the resources to care for Nancy. However, our role on appeal is not to weigh and compare the evidence; our standard of review merely asks if there was competent evidence, even hearsay evidence, at trial to support the trial court's findings.
We hold that this matter is distinguishable from In re P.A. , in which the only evidence was an unsworn statement by the guardian that the guardian had the ability to support the juvenile, and from In re J.H. , in which the proposed guardians did not testify. In this case, there is sworn testimony by Ms. Parker regarding her ability to provide appropriate care for Nancy.
While Ms. Parker's testimony appears to be the only evidence in the record to support her having adequate resources to provide appropriate care for Nancy, it is nonetheless evidence in the record. No challenge was raised at trial with respect to this evidence, nor did any party attempt to contradict or impeach Ms. Parker's testimony. In fact, in respondent's attorney's closing arguments, counsel did not advocate against Ms. Parker being awarded guardianship, but rather in favor of reunification with respondent. We hold that, although Ms. Parker's testimony was lacking in specificity, her sworn statement that she was willing to care for Nancy and possessed the financial resources to do so constituted competent evidence, which in turn supported the trial court's finding that she "has adequate resources to care appropriately for the minor child[.]"
AFFIRMED.
Judge DILLON concurs in a separate opinion.
Judge DAVIS dissents in a separate opinion.

Pseudonyms are used throughout to protect the juvenile's privacy and for ease of reading.