DILLON, Judge.
Respondent-mother ("Mother") appeals from the trial court's order awarding guardianship of the minor child, Sarah,[1] to Sarah's paternal great aunt and great uncle and relieving the Iredell County Department of Social Services ("DSS") of further efforts toward reunification. We affirm.
I. Background
The record before this Court shows DSS's longstanding involvement with Mother's family due to issues primarily related to substance abuse.
In June 2012, the trial court terminated Mother's parental rights to her daughter Jane, on grounds including neglect and failure to make reasonable progress in correcting the conditions that led to her removal from the home. See N.C. Gen. Stat. § 7B-1111(a)(1)-(2) (2017).
Six months later, in December 2012, Mother and Respondent-father[2] ("Father") (together, "Respondents") had a son, Justin. In 2016, the trial court terminated Mother's parental rights to Justin on grounds of neglect and lack of reasonable progress.
In February 2016, Mother entered residential substance abuse treatment at CASCADE in Mecklenburg County. There, she participated only irregularly in the required classes but obtained daily doses of methadone.
In June 2016, while still enrolled at CASCADE, Mother gave birth to Sarah, the child who is the subject of this present matter. As a result of Mother's daily methadone intake, Sarah was born addicted to methadone and spent three weeks in the hospital. The trial court made the following additional findings of fact with regard to Sarah and Mother's continued substance abuse:
[Mother] continued to smoke cigarettes while she was pregnant with [Sarah]. [Mother] herself has used methadone off and on for years by her own admission. She has experienced the withdrawal symptoms from methadone. When asked to describe the symptoms, she stated, "Hell." She said the baby went through the same withdrawal symptoms that she, a grown adult, had gone through. Having experienced it first hand, the symptoms of methadone withdrawal, the [Mother] chose not only [to] use methadone while pregnant but also breastfed the child after continuing to use methadone after watching the child go through symptoms for three weeks in the hospital.
On 16 August 2016, the Mecklenburg County Division of Youth and Family Services ("YFS") obtained non-secure custody of two-month-old Sarah and filed a juvenile petition alleging neglect, based primarily on Respondents' ongoing issues with substance abuse.
In December 2016, Sarah was adjudicated neglected. The trial court found that Sarah was "residing in an environment in which a sibling was adjudicated neglected," and that Mother's parental rights had previously been terminated as to two of Sarah's siblings. See N.C. Gen. Stat. § 7B-101(15) (2017). The court further found that Mother had only "minimally complied with [substance abuse] treatment" and that neither parent "had fully addressed their [substance abuse] issues and were not in a position to meet the needs of this juv[enile]."
DSS developed case plans with Respondents, which required them
to submit to a substance abuse assessment and follow through with all recommendations, to obtain a mental health assessment and follow through with all recommendations, obtain a domestic violence assessment and follow through with all recommendations[,] to enroll [in] and complete parenting classes, and to obtain and maintain appropriate housing and employment.
At a hearing on 15 February 2017, the parties consented to the trial court's entry of an initial dispositional order granting legal and physical custody of Sarah to DSS and continuing her placement with her paternal great aunt and great uncle, Mr. and Mrs. H.[3] The court found, inter alia , that Mother had failed to attend Substance Abuse Dialectical Therapy ("SADT") as recommended to address her substance abuse and mental health issues. In addition to ordering Respondents to comply with their case plans, the trial court specifically ordered Mother to obtain a new substance abuse assessment and comply with its recommendations, submit to random drug screens, and cooperate with DSS and the guardian ad litem ("GAL") by "signing all releases of information necessary for DSS and the GAL to exchange information with [her] providers and monitor [her] progress[.]"
At the 90-day hearing, the court found that Mother had obtained a new substance abuse evaluation and re-enrolled in the year-long SADT program. She was continuing to receive methadone treatment and submitted one negative screen for illegal substances. She had also completed a domestic violence evaluation and attended eight of ten recommended sessions, though regularly leaving early the sessions that she did attend.
In July 2017, Mother gave birth to Respondents' third child, "Irene." Irene remained in Mother's custody during the course of these proceedings.
In September 2017, at the initial permanency planning hearing, the parties consented to the trial court's entry of an order establishing for Sarah a primary plan of reunification with Mother and a secondary plan of guardianship.
In April 2018, following a permanency planning hearing on the matter, the trial court entered a subsequent permanency planning order which changed Sarah's permanent plan to guardianship and appointed Mr. and Mrs. H. as guardians. The court relieved DSS of further efforts toward reunification with Respondents. Mother filed timely notice of appeal from the order.
II. Analysis
A. Standard of Review
"Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law." In re L.M. , 238 N.C. App. 345, 347, 767 S.E.2d 430, 432 (2014). "In choosing an appropriate permanent plan ..., the juvenile's best interests are paramount. We review a trial court's determination as to the best interest of the child for an abuse of discretion." In re J.K. , --- N.C. App. ----, ----, 799 S.E.2d 439, 441 (2017).
B. Verification of Guardians
Mother first claims the trial court violated Section 7B-906.1(j) of our General Statutes by naming Mr. and Mrs. H. as Sarah's guardians without sufficiently verifying that they "have adequate resources to care appropriately for the juvenile" and that they each "understand[ ] the legal significance" of the guardianship. N.C. Gen. Stat. § 7B-906.1(j) (2017). Mother does not challenge the sufficiency of the court's findings but contends the evidence adduced at the hearing was insufficient to verify (1) the adequacy of Mr. and Mrs. H.'s resources or (2) Mr. H.'s understanding of the legal significance of guardianship. We disagree.
We conclude that the evidence was sufficient to show the adequacy of Mr. and Mrs. H's resources to care for Sarah. Specifically, Mrs. H. testified that she and her husband are both currently employed full-time; they own their home of seventeen (17) years and are current on their mortgage; they are current on their utilities and all other bills; they have cared for Sarah for eighteen (18) months and have been able to provide for all of her needs, including medical care and daycare; they have a monthly surplus of $300 to $450 after accounting for all of Sarah's needs; they receive Work First benefits for Sarah; and they would be able to provide for Sarah even if they lost the Work First benefits and continued to receive no assistance from Respondents. Further, DSS advised the court that Mr. and Mrs. H. "have provided for all of [Sarah's] needs including many doctor appointments over the past year" and are sufficiently "financially secure" to meet her "specific needs" going forward.
Unlike the cases cited by Mother, the court in this case received more than unsworn and/or wholly conclusory assurances regarding the adequacy of the would-be guardians' resources. See In re J.D.M.-J. , --- N.C. App. ----, ----, 817 S.E.2d 755, 757 (2018) (finding "the social worker's statement that there were no concerns with the [guardians'] financial affidavit" and witness testimony that the guardians "possess some income" and "maintain a stable home and a good home" insufficient to support verification); see also In re P.A. , 241 N.C. App. 53, 65, 772 S.E.2d 240, 248 (2015) (concluding that the guardian's "unsworn affirmative answer to the trial court's inquiry as to whether she had 'the financial and emotional ability to support this child and provide for its needs' alone [was] not sufficient evidence, as this [was her] own opinion of her abilities"). While Mrs. H. did not go into minute detail regarding her and her husband's finances, she provided the court with specific information regarding their sources of income, home-ownership history, and demonstrated ability to meet all of their monthly expenses, including those related to Sarah's care. See In re N.H. , --- N.C. App. ----, ----, 804 S.E.2d 841, 845 (2017) ; see also In re C.P. , --- N.C. App. ----, ----, 801 S.E.2d 647, 653 (2017).
Mother also challenges the evidentiary support for the trial court's verification that Mr. H. "understands the legal significance" of guardianship under Section 7B-906.1(j).[4] She notes Mr. H. did not testify at the hearing. Moreover, Mother contends, "[t]he social worker's testimony was limited to a conclusory statement that she had discussed guardianship with [Mr. and Mrs. H.] and that 'they' were willing to accept that role."
We agree with Mother that, "[w]hen two persons are appointed together as guardians, the trial court must verify the understanding of both persons." Here, however, the trial court heard evidence that both Mr. and Mrs. H. understood the legal significance of the guardianship appointment. Specifically, Mrs. H. testified that she and her husband had discussed guardianship with the DSS social worker and "in depth" between themselves. She attested to their mutual understanding of the rights and responsibilities resulting from guardianship, including the implications of becoming parties to this juvenile proceeding. Such testimony constitutes competent evidence supporting the court's findings. See In re L.M. , 238 N.C. App. at 348, 767 S.E.2d at 433.
Again, we find the cases cited by Mother inapposite, inasmuch as the trial court in those cases received no evidence regarding the non-testifying spouse's understanding of guardianship. See id. at 348-49, 767 S.E.2d at 433 ("[T]he evidence before the trial court tended to relate to the foster father's role in raising Lance and his desire to continue doing so; there was no evidence that the foster mother accepted responsibility for Lance."); see also In re E.M. , --- N.C. App. ----, ----, 790 S.E.2d 863, 872 (2016) ("[T]he husband in the custodial couple did not testify, and there is no evidence to indicate that he understood the legal significance of taking custody of Eddie." (emphasis added)). Accordingly, we hold the court fully complied with the verification requirements in Section 7B-906.1(j).
C. Ceasing Reunification Efforts
Mother also challenges the trial court's decision to cease reunification efforts. "This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." In re C.M. , 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007).
Under Section 7B-906.2(b) of our General Statutes, "[r]eunification shall remain a primary or secondary [permanent] plan unless the court ... makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety."[5] N.C. Gen. Stat. § 7B-906.2(b) (2017) ; see also N.C. Gen. Stat. § 7B-906.1(d)(3) (2017). The determination that further reunification efforts would be futile or inconsistent with the juvenile's health or safety "is in the nature of a conclusion of law that must be supported by adequate findings of fact." In re J.H. , 244 N.C. App. at 276, 780 S.E.2d at 243.[6]
Section 7B-906.2 further provides that "the court shall make written findings as to each of the following, which shall demonstrate lack of success:"
(1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
(2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
(3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
(4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.
N.C. Gen. Stat. § 7B-906.2(d) (2017). Such findings are required in order to cease reunification efforts pursuant to Section 7B-906.2(b). See In re D.A. , --- N.C. App. at ----, 811 S.E.2d at 734.
Here, the trial court's findings of fact include the determination required by Section 7B-906.2(b), as follows:
13. Based upon [Respondents'] lack of sufficient, timely progress in addressing the issues that caused the juvenile to enter the purview of the court and foster care, further efforts to reunite the juvenile with [Respondents] clearly would be unsuccessful and inconsistent with the juvenile's health or safety and[,] thus, should cease.
The court also made each of the requisite findings prescribed by Section 7B-906.2(d), to wit:
15. [Respondents] are not making adequate progress within a reasonable period of time under the plan.
16. [Respondents] are not actively participating in or cooperating with the plan, DSS, and the GAL for the juvenile.
17. [Respondents] have not remained available to the Court, DSS, and the GAL for the juvenile.
18. The Court finds by clear and convincing evidence that [Respondents] are acting in a manner inconsistent with the health or safety of the juvenile.
Mother takes exception to each of these findings.[7]
We begin our analysis by reviewing the trial court's evidentiary findings pertinent to its inquiry under Section 7B-906.2. Among other things, the court found as follows:
6. At the last hearing on September 6, 2017, both DSS and the GAL recommended ceasing [reunification efforts] with [Respondents] and granting guardianship to [Mr. and Mrs. H.]. However, a consent order was entered that left reunification as the plan for [Sarah] so that [Mother] could show she is ready to reunify.
7. Since September 6, 2017, [Mother] has only attended 9 of 18 visits and she usually leaves 10-15 minutes early ....
8. [Mother] has not demonstrated her ability to parent [Sarah] along with [Irene] during visits.
9. [Sarah] is deaf in her left ear and requires a hearing aid. DSS social workers have had to remind [Mother] repeatedly to put in the hearing aid during visits. DSS has even had to remind [Mother] which ear needs the hearing aid repeatedly.
10. [Mr. and Mrs. H.] take [Sarah] to weekly therapy and monthly medical appointments. [Mother] has only attended one of these appointments and she was 25 minutes late.
11. [Mother] failed to attend follow-up substance abuse treatment; and she failed to sign releases for DSS and GAL to monitor her progress. [Mother] also allowed her dentist to prescribe her with opiates for pain and she took the pills rather than request a non-opiate pain reliever.
Of these findings, Mother takes exception only to Finding 11. To the extent she does not except to the remaining findings, they are binding on this Court. See Koufman v.Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
We conclude that the evidence supports the entirety of Finding 11. Specifically, a DSS social worker attested to each of the facts included therein. The finding is further supported by the written reports submitted to the court by DSS and the GAL, which were admitted into evidence without objection, and by the trial court's prior orders in this cause. While Mother attempts to re-characterize or explain away the facts found by the court by calling attention to other facts or evidence more favorable to her, she makes no showing of error.
Turning to the trial court's ultimate findings under Section 7B-906.2(d), we conclude that Finding 15 is supported by the court's evidentiary findings and the evidence of record. At the time of the 2018 hearing, Sarah was nineteen (19) months old and had been in DSS custody for seventeen (17) consecutive months. Given Mother's history of child neglect and the termination of her parental rights to Justin and Jane, the court could reasonably view her failure to pursue recommended substance abuse after-care, her recent opiate use, and her disengagement from visitation and other involvement with Sarah as evincing a lack of "adequate progress within a reasonable period of time[.]"
Finding 16 is likewise supported by competent evidence and by the court's evidentiary findings. At the time of the hearing, Mother had discontinued substance abuse treatment; she failed to attend two of three requested drug screens after testing positive for hydrocodone in addition to her therapeutic methadone on 31 October 2017; she was attending only one-half of her visitations with Sarah and was arriving late and leaving early; and she was not attending Sarah's medical appointments or participating in weekly phone calls with her daughter. Mother had yet to sign court-ordered releases for DSS or provide other requested documentation. She refused to have any contact with the GAL.
We agree with Mother that Finding 17, while accurate as to Father, is not supported by the evidence insofar as it describes Mother as unavailable to DSS and the trial court. The evidence does show that Mother will not communicate with the GAL. Although Finding 17 is erroneous in part, we conclude the error is harmless. A finding that Mother has not remained available to DSS and the court is not required to support the court's determination that further reunification efforts would be unsuccessful or contrary to Sarah's health or safety or its decision to eliminate reunification from the permanent plan under Section 7B-906.2(b). Moreover, the court's remaining findings under Section 7B-906.2(d) support the court's decision. See In re E.M. , --- N.C. App. at ----, 790 S.E.2d at 869.
Finding 18 is also supported by the evidence and the trial court's Findings 9-11. Mother has failed to pursue after-care recommended for her longstanding substance abuse issues. In addition to missing half of her scheduled visitations with Sarah during the four months preceding the hearing, Mother has failed to attend Sarah's medical appointments and has demonstrated a persistent disinterest in her medical needs, particularly her hearing loss. The court did not err in finding these actions inconsistent with Sarah's health and safety.
Finally, we hold the trial court did not err in ceasing reunification efforts under Section 7B-906.2(b). The court's findings support its determination in Finding 13 that further efforts to reunify Sarah with Mother "clearly would be unsuccessful and inconsistent with the juvenile's health or safety and, thus, should cease." The findings further reflect the court's due consideration of the factors set forth in Section 7B-906.2(d).
We note Mother takes general exception to the trial court's findings and conclusions that it is not possible for Sarah to be placed with either parent within the next six months; that Respondents "are not fit and proper to exercise the care, custody, and control of [Sarah] and have acted in a manner inconsistent with their rights as parents; and that guardianship is '[t]he best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time ....' " Mother presents this objection in the course of her argument challenging the court's decision to cease reunification efforts under Section 7B-906.2(b). None of these findings or conclusions is directly related to the court's decision-making under Section 7B-906.2(b).[8] See N.C. Gen. Stat. § 7B-906.2(d). They pertain instead to the court's permanency planning and placement decisions for Sarah.[9] See N.C. Gen. Stat. § 7B-906.1(e) (2017).
Aside from the verification issues previously discussed in Section II, Mother does not challenge the court's dispositional decision to award guardianship to Mr. and Mrs. H. See N.C. R. App. P. 28(b)(2), (6). Nor does she contest the court's assessment of Sarah's best interests. See id. Therefore, we find that Mother's conclusory exception to Findings 1, 20, 26, 28 and Conclusions 2, 4, and 5 does not present a basis for relief on appeal. See Spoon v. Spoon , 233 N.C. App. 38, 45 n.2, 755 S.E.2d 66, 72 n.2 (2014).
III. Conclusion
The trial court properly verified that Mr. and Mrs. H. have adequate resources to serve as Sarah's guardians and understand the legal significance of guardianship. The court did not err in ceasing reunification efforts with regard to Mother. The order is hereby affirmed.
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and BERGER concur.

The parties have agreed to use this pseudonym to protect the juvenile's privacy. N.C. R. App. P. 42. We use additional pseudonyms to refer to Sarah's siblings.

Father is not a party to the present appeal.

Pseudonyms.

As with the verification of the guardians' resources, Mother does not contest the sufficiency of the court's findings that Mr. and Mrs. H. "understand what it means to be a guardian" and "understand[ ] the legal significance of the placement[.]"

Although our case law on this issue has developed under the concept of "ceasing reunification efforts," a vestige of prior versions of the relevant statutes, the current iteration of the Juvenile Code makes the trial court's elimination of reunification from the permanent plan the germane event for purposes of appeal. See N.C. Gen. Stat. § 7B-1001(a)(5) (2017).

Alternatively, we have characterized this determination as an "ultimate finding" that must be supported by the court's evidentiary findings. In re D.A. , --- N.C. App. ----, ----, 811 S.E.2d 729, 734 (2018) ; but cf. In re L.M.T. , 367 N.C. 165, 169, 752 S.E.2d 453, 456 (2013) (treating equivalent findings made under former N.C. Gen. Stat. § 7B-507(b)(1) as "findings clearly support[ing] the trial court's conclusions that '[r]eturn of the juveniles ... is contrary to the welfare and best interest of the juveniles,' ... and '[t]hat [DSS] should be relieved of reunification and visitation efforts with the Respondents.' " (emphasis added)).

Mother characterizes Finding 18 as "more properly denoted" a conclusion of law. We will not assay here the distinction between an "ultimate finding" required by statute and a conclusion of law. In either case, our task is to determine whether Finding 18 is supported by the trial court's evidentiary findings grounded in competent evidence.

Insofar as it directly relates to the court's decision, the finding that it would not be possible to return Sarah to Mother's care within the next six months is fully supported by the evidence.

A finding that a juvenile's parents are unfit or have acted in a manner inconsistent with their constitutionally protected status as parents is required in order to award custody to a non-parent. E.g. , In re R.P. , --- N.C. App. ----, ----, 798 S.E.2d 428, 430 (2017).