An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-448

Filed 18 February 2026

Durham County, Nos. 19JA000090-310, 19JA000093-310, 19JA000094-310, 19JA000095-310

IN THE MATTER OF: D.S., K.R, J.R., S.R.

Appeal by Respondent from order entered 11 December 2024 by Judge Doretta L. Walker in Durham County District Court. Heard in the Court of Appeals 27 January 2026.

*Parent Defender Annick Lenoir-Peek, by Assistant Parent Defender, Jacky L. Brammer, for respondent-appellant mother.*

*Keith T. Roberson, for petitioner-appellee Durham County Department of Social Services.*

*Fox Rothschild LLP, by Brian C. Bernhardt and Nathan W. Wilson, for petitioner-appellee Guardian ad Litem.*

STADING, Judge.

Respondent-Mother ("Mother") appeals the trial court's order awarding guardianship of her minor children to her mother ("Maternal Grandmother."). On appeal, Mother contends the trial court committed error by failing to adequately verify Maternal Grandmother's financial resources. She also asserts the trial court erred by failing to make the required statutory findings to waive future reviews, and

by failing to make the required statutory findings for a fourteen-year-old juvenile. After careful consideration, we affirm in part and remand in part.

## I. Background

On 8 April 2019, the Durham County Department of Social Services ("DSS") accepted a family assessment case for the investigation of improper discipline of "Denise," "Kylie," "Jamal," "Sam," and "Nia."[1] Denise disclosed Mother had pushed her and her older sister down to the floor and beaten them with a belt, a hanger, or her hand. Denise reported she was beaten with a hanger after she failed to follow Mother's directions "quickly enough." Denise also alleged her and her older sister were beaten "most days," sometimes "for no reason." A social worker observed red marks on Denise's left arm.

On 11 April 2019, Mother admitted feeling depressed and requested her children to be placed outside of her home. In response, DSS conducted a "kinship placement" of Mother's minor children with Maternal Grandmother. Thereafter, Mother was "ejected from her home" and failed to comply with recommendations concerning her mental health.

On 10 May 2019, DSS filed a petition alleging the minor children were neglected and dependent. DSS simultaneously requested the trial court to issue a

---

[1] We use pseudonyms to protect the identity of minor children. *See* N.C. R. App. P. 42(b). Two other siblings were listed on the petition filed by DSS but are not a part of this appeal. Nia eventually aged out of juvenile proceedings and her custody is no longer at issue.

nonsecure custody order granting immediate temporary custody of the minor children to Maternal Grandmother. At the time of filing this petition, DSS was unable to contact Mother for two straight weeks. According to DSS, Mother had not: contacted her minor children during the previous two weeks; informed DSS of any new residence for herself or her minor children; complied with recommendations to complete services for mental health, substance abuse, and parenting education; or provided Maternal Grandmother with a food stamp card to feed the minor children. That same day, the trial court ordered nonsecure custody of the minor children to Maternal Grandmother for seven days. Based upon the verified petition, the trial court found there was a reasonable factual basis to believe the minor children had been abandoned.

On 17 May 2019, the trial court entered an "order on the need for continued nonsecure custody," finding good cause to continue the pre-adjudication hearing to be heard together with the nonsecure custody hearing on 31 May 2019. The minor children remained placed in the nonsecure custody of Maternal Grandmother. On 31 May 2019, the trial court entered an order continuing nonsecure custody of the minor children with Maternal Grandmother since Mother failed to appear in court. The trial court held a pre-adjudication conference and deferred addressing visitation until service and appearance by the parties.

On 5 November 2019, after a hearing on 4 October 2019, the trial court entered a pre-adjudication order regarding the placement of the minor children. The trial

court ordered nonsecure custody of the minor children remain with Maternal Grandmother since good cause existed for the placement to continue, and that this placement was consistent with the minor children's "health, safety, welfare, and best interests."

On 31 March 2020, the trial court entered an order on adjudication after hearings on 25 November 2019 and 27 January 2020. The trial court adjudicated the minor children neglected and dependent. The trial court found, inter alia, that the minor children "were neglected in that they were exposed to an environment injurious to their safety and wellbeing when [Mother] cared for them while failing to maintain her own mental health needs, while failing to maintain stable housing and while under the influence of an illegal substance (marijuana)[.]" The trial court also found:

> 28. When the children moved in with maternal grandmother, she was without adequate resources to care for them and she contacted the fathers[.] Neither father provided any monetary support or other assistance to the grandmother during that period of time prior to the filing of the petition.

The trial court concluded that the return of the minor children to the custody of Mother would be "contrary to the health, safety, welfare and best interests of the juveniles." The trial court ordered that Maternal Grandmother maintain nonsecure temporary custody of the minor children pending further orders.

On 22 September 2020, the trial court entered a disposition order after a hearing on 16 June 2020. The trial court found: DSS "has assessed that while

[Maternal Grandmother] has managed to provide for the children's needs, she is strained financially[.] The Department recommends custody of [Denise, Sam, Kylie, and Jamal] be granted to the Department while Maternal Grandmother maintains placement[.] This would make her eligible for financial assistance." The disposition order concluded that "DSS has made reasonable efforts to eliminate the need for the children to remain outside the home, however, placement outside the home is in the best interests of the children." The trial court granted DSS legal custody of the minor children "with placement authority in that agency including . . . with the current relative placement [Maternal Grandmother]."

From June 2021 to September 2024, the trial court conducted nine permanency planning hearings, resulting in seven permanency planning hearing orders ("PPO"). Mother moved to amend the third PPO order on 7 September 2023, requesting additional findings, one of which stated:

> 53. The Court wants to review this matter in July 2023, primarily because of concerns regarding proper supervision of the children. The two older siblings are not good babysitters. Maternal Grandmother's younger daughter is not reliable enough. Grandmother needs to find a responsible adult.

That same day, the trial court filed an amended PPO to include additional findings.

On 16 November 2023, a permanency planning hearing was adjourned for need of additional information. During the hearing, Mother was under cross-examination and refused to read text messages between her and one of her minor children. The

trial court chose to review the phone records and finish the hearing before determining whether a contempt proceeding was appropriate. On 6 December 2023, the trial court entered a permanency planning review adjournment order directing DSS to subpoena and obtain Mother's phone records.

On 24 April 2024, the trial court entered the sixth PPO in this matter. The trial court found that: "[f]urther reunification efforts for all parents would be futile and not in the best interest of the juveniles and should therefore be ceased[,]" and "[i]t is not in the best interest of the children to have visitation with their mother at this time[.]" The trial court ordered Mother's visits remain ceased because of safety concerns, but did allow for Mother to motion to reinstate her visitation in the future. Further, the trial court ordered that Denise "should not be required to babysit her younger siblings and [Maternal Grandmother] needs to find an alternate arrangement for a proper adult to provide child care in her absence."

On 11 December 2024, the trial court entered the final PPO that "accepted into evidence, reviewed, and considered," inter alia, Durham County DSS court summaries, GAL court reports, and Mother's court report. The trial court found:

> 33. The children have been in care since June 2020. [Mother] has not addressed the reasons that her children were removed from her home. [Maternal Grandmother] is willing to provide long term care for her grandchildren through guardianship. [Maternal Grandmother] is willing to support the children visiting with their parents.

The trial court also found that DSS "assisted [Maternal Grandmother] with completing the requirements to obtain her foster care license[.]" The trial court ordered placement of the minor children in the care of Maternal Grandmother, effective 30 September 2024. Additionally, the trial court ordered that there "shall be no further scheduled reviews," and the parties may move the court to modify this order. On 10 January 2025, Mother entered her notice of appeal from the 11 December 2024 PPO.

## II. Analysis

Mother contends the trial court erred by failing to properly verify that Maternal Grandmother had adequate resources before awarding her permanent guardianship of the minor children. Mother also argues the trial court did not make the findings required to waive future review hearings, and that these findings were not made by clear and convincing evidence. Finally, Mother argues the appealed PPO lacks the required findings to show assistance for fourteen-year-old Denise's transition into adulthood.

This Court's review of a permanency planning order "'is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law,' with '[t]he trial court's findings of fact [being] conclusive on appeal if supported by any competent evidence.'" *In re L.E.W.*, 375 N.C. 124, 129, 846 S.E.2d 460, 465 (2020) (cleaned up). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding."

*In re J.M.*, 384 N.C. 584, 591, 887 S.E.2d 823, 828 (2023) (citation omitted). Competent evidence from a permanency planning hearing may consist of "any evidence, including hearsay evidence . . . or testimony or evidence from any person that is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." *Id.* (citation omitted). "Unchallenged findings of fact are deemed to be supported by the evidence and are binding on appeal." *In re P.L.E.*, 290 N.C. App. 176, 180, 891 S.E.2d 613, 616 (2023) (cleaned up).

## A. Verification of Guardianship

Mother contends the trial court failed to properly verify Maternal Grandmother's financial resources before awarding her permanent guardianship of the minor children. Mother argues that Maternal Grandmother is unemployed, has no reliable transportation, and has no financial resources of her own.

N.C. Gen. Stat. § 7B-906.1(j) (2023) requires:

> If the court determines that the juvenile shall be placed in the custody of an individual other than a parent or appoints an individual guardian of the person pursuant to G.S. 7B-600, the court shall verify that the person receiving custody or being appointed as guardian of the juvenile understands the legal significance of the placement or appointment and will have adequate resources to care appropriately for the juvenile. The fact that the prospective custodian or guardian has provided a stable placement for the juvenile for at least six consecutive months is evidence that the person has adequate resources.

Subsection 7B-906.1(j) "does not require the trial court to make any specific findings in order to make the verification. However, . . . the record must show the trial court received and considered reliable evidence that the guardian or custodian had adequate resources and understood the legal significance of custody or guardianship." *In re K.P.*, 383 N.C. 292, 306, 881 S.E.2d 250, 259 (2022) (quoting *In re J.D.M.-J.*, 260 N.C. App. 56, 65, 817 S.E.2d 755, 761 (2018)).

The 11 December 2024 PPO found:

> 28. The children have been in care for a long time. It is time for permanence. [Maternal Grandmother] is now receiving state rate for the minor children and has the ability to care for the minor children. The Court notes that she was taking care of the children financially even before the financial funding became available. She demonstrated an understanding of what it means to care for the minor children as she had been doing so for years.
>
> . . . .
>
> 35. . . . . [Maternal Grandmother] understands the legal significance of the appointment, including rights and responsibilities as a guardian/custodian, and will have adequate resources to care appropriately for the child. The Court has received the testimony of guardians, and they have the ability to care for the child. [Maternal Grandmother] has provided adequate care for the children for an extended period of time. [Maternal Grandmother] has met DSS qualifications for being a licensed foster parent.

The permanency planning hearing included testimony from Maternal Grandmother and a social worker supervisor. Maternal Grandmother testified, "I'm not working but I still have a job." She explained, "because, like, I'm still grieving for

my husband, and the kids were supposed to not be left alone . . . But as I said the job is still open, I'm just not there." When asked whether she had any financial concerns needing additional assistance that was not being supported by DSS, Maternal Grandmother replied, "[n]o. I can work. I have a job. I can go out to work if I need to. If you -- but right now, no." As to the vehicle at her home, Maternal Grandmother testified, "[i]t's in my name. It's my vehicle." With respect to Maternal Grandmother's licensure and monthly stipend from the State, the social worker supervisor testified Maternal Grandmother currently receives a total of $3,036 until the children reach age thirteen.

DSS and GAL reports were also introduced as evidence during the permanency planning hearing. The May DSS report stated: "the maternal grandmother meets the children's immediate needs," and "[t]he physician reported both children were gaining weight and progressing well." The August DSS report stated: "[Maternal Grandmother] has demonstrated the ability to provide consistent and adequate care for her grandchildren. In her home they report feeling safe and getting their need[s] met." And further, "[the social worker] has no concerns with the children remaining in the home with guardianship being given to their maternal grandmother[.]" The GAL report stated: "[the minor children] continue to be placed at their maternal grandmother's house. They are all doing very well here and have been here for more than four years." As to available resources to meet the needs of the minor children,

the GAL report provided: "[Maternal Grandmother] has obtained her licensure which would allow her to receive a stipend which would help her financially."

Mother contends the trial court made merely nominal findings that Maternal Grandmother had adequate resources for guardianship, and that those findings are unsupported. However, subsection 7B-906.1(j) only requires "the record must show the trial court received and considered reliable evidence that the guardian or custodian had adequate resources." *In re K.P.*, 383 N.C. at 306, 881 S.E.2d at 259 (citation omitted). Mother also points to what could be considered contradicting evidence about Maternal Grandmother's resources, but our role is not to weigh evidence. *See In re N.H.*, 255 N.C. App. 501, 507, 804 S.E.2d 841, 845 (2017) ("[O]ur role on appeal is not to weigh and compare the evidence; our standard of review merely asks if there was competent evidence, even hearsay evidence, at trial to support the trial court's findings.").

The minor children were reportedly doing "very well" placed with Maternal Grandmother "for more than four years." The minor children's stable placement with Maternal Grandmother for at least six months is evidence of adequate resources. N.C. Gen. Stat. § 7B-906.1(j) ("The fact that the prospective custodian or guardian has provided a stable placement for the juvenile for at least six consecutive months is evidence that the person has adequate resources."). In addition to the minor children's lengthy and stable placement with Maternal Grandmother, the record demonstrates that Maternal Grandmother had no financial concerns, received

adequate financial resources from DSS, and was able to get her old job back if she wanted. Contrary to Mother's urging, the trial court's findings are adequately supported. For these reasons, we conclude the trial court "received and considered reliable evidence" that Maternal Grandmother had adequate resources. *In re K.P.*, 383 N.C. at 306, 881 S.E.2d at 259 (citation omitted). The trial court did not err in determining Maternal Grandmother had adequate resources to meet the minor children's needs.

### B. Future Reviews

Mother contends the trial court erred in ceasing further review hearings. Mother argues the trial court neither made all the required findings to waive future reviews nor made any of those findings by clear and convincing evidence. When it is argued the trial court failed to follow a statutory mandate, "the error is preserved and is a question of law reviewed *de novo*." *In re E.M.*, 263 N.C. App. 476, 479, 823 S.E.2d 674, 676 (2019). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* (citation omitted). Mother's brief only challenged evidentiary support for the finding that Maternal Grandmother had adequate resources under 7B-906.1(j). And any unchallenged findings are presumed to be supported. *In re J.S.*, 250 N.C. App. at 372, 792 S.E.2d at 863 (citation omitted).

Subsection 7B-906.1(n) provides:

> Notwithstanding other provisions of this Article, the court

may waive the holding of permanency planning hearings required by this section, may require written reports to the court by the agency or person holding custody in lieu of permanency planning hearings, or order that permanency planning hearings be held less often than every six months if the court finds by clear and convincing evidence each of the following:

(1) The juvenile has resided in the placement for a period of at least one year or the parties are in agreement and the court enters a consent order pursuant to G.S. 7B-801(b1).

(2) The placement is stable and continuation of the placement is in the juvenile's best interests.

(3) Neither the juvenile's best interests nor the rights of any party require that permanency planning hearings be held every six months.

(4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a permanency planning or modification motion or on the court's own motion.

(5) The court order has designated the relative or other suitable person as the juvenile's permanent custodian or guardian of the person.

*Id.* § 7B-906.1(n)(1)–(5). "The trial court must make written findings of fact satisfying each of the enumerated criteria listed in N.C. Gen. Stat. § 7B-906.1(n), and its failure to do so constitutes reversible error." *In re P.A.*, 241 N.C. App. 53, 66, 772 S.E.2d 240, 249 (2015) (citation omitted). Although the trial court's order found "[t]his hearing is being held pursuant to N.C. Gen. Stat. sec. 906.1 and 906.2," the trial court did not specify in its written order or in open court that its findings were supported by clear and convincing evidence.

The first statutory mandate under subsection 7B-906.1(n) is for the trial court to make findings supported by clear and convincing evidence.  Precedent generally compels the trial court to state the standard of proof either in its written order, or in open court.  *In re E.M.*, 249 N.C. App. 44, 56, 790 S.E.2d 863, 873 (2016).  But failure to state the standard of proof used to make its findings is not "prejudicial error" if the "'record when viewed in its entirety clearly reveals that the court applied the proper evidentiary standard' or where the appellant does not challenge those factual findings as lacking evidentiary support."  *Id.* (quoting *In re M.D.*, 200 N.C. App. 35, 39, 682 S.E.2d 780, 783 (2009)).  "[T]o obtain relief on appeal, an appellant must not only show error, but that . . . the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action."  *In re L.E.W.*, 375 N.C. at 128, 846 S.E.2d at 464–65 (cleaned up).

Although Mother's brief "does not challenge those factual findings as lacking evidentiary support," the PPO does not address all of the enumerated criteria.  *In re E.M.*, 249 N.C. at 56, 790 S.E.2d at 873.  Among them, there an absence of findings addressing the criteria stated under N.C. Gen. Stat. § 7B-906.1(n)(2)–(4).  Further, "the best practice is for a court to affirmatively state the standard of proof that it applied in making factual determinations," and the court should do so when making the appropriate findings on remand.  *See In re E.M.*, 249 N.C. at 56, 790 S.E.2d at 873.  As to the issue of waiving future review, since the record contains sufficient evidence from which the trial court could make the appropriate findings under the

statute, we need not vacate the PPO. Accordingly, as to this issue, the PPO is remanded.

### C. Findings for Juveniles Fourteen Years of Age and Older

Mother next contends the trial court erred by failing to make findings required for fourteen-year-old Denise.

N.C. Gen. Stat. § 7B-912(a)(1)–(3) (2023) requires:

> In addition to the permanency planning requirements under G.S. 7B-906.1, at every permanency planning hearing for a juvenile in the custody of a county department of social services who has attained the age of 14 years, the court shall inquire and make written findings regarding each of the following:
>
> (1) The services provided to assist the juvenile in making a transition to adulthood.
>
> (2) The steps the county department of social services is taking to ensure that the foster family or other licensed placement provider follows the reasonable and prudent parent standard as provided in G.S. 131D-10.2A.
>
> (3) Whether the juvenile has regular opportunities to engage in age-appropriate or developmentally appropriate activities.

Subsection 131D-10.2A(a) (2023) sets out the reasonable and prudent parent standard as:

> [C]haracterized by careful and sensible parental decisions that are reasonably intended to maintain the health,

safety, and best interests of the child while at the same time encouraging the emotional and developmental growth of the child that a caregiver shall use when determining whether to allow a child in foster care under the responsibility of the State to participate in extracurricular, enrichment, cultural, and social activities.

Our review leads us to conclude the record contains sufficient evidence to support the first required finding "services provided to assist the juvenile in making a transition to adulthood," but does not make an adequate finding in accordance with subsection § 7B-912(a)(1). The trial court noted Denise was provided treatment and services from a pediatrician, dentist, and therapist. The trial court observed that Denise was discharged from the therapist for nonparticipation, due to "not [being] interested in any therapy." The trial court also found Denise "recently participated in the school athletics and dance team." These findings show the services provided for Denise's physical health, mental health, and social development but do not speak directly to assisting her "transition into adulthood." *Id.* § 7B-912(a)(1).

The trial court also addressed the "steps the county department of social services" took to ensure Maternal Grandmother followed the "reasonable and prudent parent standard." *Id.* § 7B-912(a)(2). The trial court found that DSS had "monitored and visited the juveniles' placement, assisted the placement with completing the requirements to obtain her foster care license, held a guardianship conference with the placement, ensured the juveniles were receiving services, ensured visitation occurred." The steps taken by DSS proved successful as the trial court found

Maternal Grandmother "has provided adequate care for the children for an extended period of time," and "has met DSS qualifications for being a licensed foster parent." Again, although the record contains sufficient evidence to support such findings, the trial court did not make adequate findings that DSS took steps to ensure Maternal Grandmother made "careful and sensible parental decisions" in accordance with section 131D-10.2A's reasonable and prudent parent standard. *Id.* § 7B-912(a)(2).

Finally, despite the record containing sufficient evidence to enter findings under subsection 7B-912(a)(3), the trial court did not adequately address whether Denise "has regular opportunities to engage in age-appropriate or developmentally appropriate activities." *Id.* § 7B-912(a)(3). While the trial court found Denise had opportunities to engage in activities including "the school athletics and dance team," and therapy, the trial court did not indicate whether it found these activities were "age-appropriate or developmentally appropriate." *Id.*

In sum, although the trial court made some findings pertaining to the requirements of subsection 7B-912(a)(1)–(3), the trial court did not adequately address each required finding under the statute. Since sufficient evidence exists in the record to support each statutory finding, the PPO need not be vacated, but merely remanded to the trial court to make the required findings.

### D. Conclusion

For the foregoing reasons, we hold the trial court did not err in awarding custody of the minor children to Maternal Grandmother since it made the requisite

verification under N.C. Gen. Stat. § 7B-906.1(j).  Further, we remand the PPO to the trial court to make the requisite findings under N.C. Gen. Stat. § 7B-906.1(n). Finally, we remand the PPO to the trial court to make requisite findings regarding Denise under N.C. Gen. Stat. § 7B-912(a).

AFFIRMED IN PART; REMANDED IN PART.

Judges STROUD and FREEMAN concur.

Report per Rule 30(e).